IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>**KEVIN VIGIL**, )<br>)<br>Defendant. ) | Cr. No. 18-739 MV |

**UNITED STATES' MOTION *IN LIMINE* TO EXCLUDE HEARSAY STATEMENTS**

The United States hereby files this omnibus motion *in limine* to exclude various hearsay statements that, upon information and belief, Defendant intends to attempt to introduce at trial.

**BACKGROUND**

1. In the early morning hours of February 4, 2018, Defendant Kevin Vigil, a non-Indian, sexually assaulted a six-year-old girl, A.W., who is a member of the Ohkay Owingeh Pueblo.

2. A.W.'s parents – mother C.W. and father T.W. – reported the sexual assault to law enforcement authorities and immediately took the child to Presbyterian Española Hospital (PEH) and then to Christus St. Vincent Hospital (CSVH) in Santa Fe for a Sexual Assault Nurse Exam (SANE).

3. At CSVH, Sexual Assault Nurse Examiner Corine Luna ("Nurse Luna") spoke to A.W. during the examination. A.W. told her that Defendant, whom she refers to as "Uncle Kevin," touched her "private parts" with "his fingers and his private part." Nurse Luna later asks, "What part did he put his private part in? With one finger can you show me the part that he

put it in?" A.W. then pointed to her butt and said, "He put it in both places. He did it two times."

4. Nurse Luna said the examination shows injuries to A.W.'s vagina and anus are consistent with penetration or attempted penetration. She also stated that the skin between A.W.'s labia majora and minora was rubbed raw and was "weeping," that there was "gaping" in A.W.'s anus, and that A.W.'s wounds were "very fresh."

5. As part of the investigation, Federal Bureau of Investigation Special Agent Russell Romero and Special Agent Michael Marycz spoke to Defendant on February 4, 2018, at his home.

6. Defendant told the agents that T.W. and C.W. had spent the night at his house, and that he had lain in bed with A.W., but he denied ever touching A.W. inappropriately. During the interview, he said, "I would never touch nobody!" and stated multiple times, "I did not touch her!"

7. On February 6, 2018, Special Agent Romero talked to J.T., the girlfriend of one of A.W.'s family members. During that interview, J.T., who has no firsthand knowledge of the assault perpetrated against A.W., speculates about what might have happened that night.

## ARGUMENT

### I. Motion to Exclude Defendant's Hearsay Statements

8. The United States respectfully moves this Court to exclude any out-of-court statement, offered for the truth of the matter asserted, without a valid hearsay exception. Specifically, the United States requests the Court prohibit Defendant from introducing evidence of his prior statements to law enforcement.

9.      Generally, an out-of-court statement, offered for the truth of the matter asserted, is inadmissible as hearsay.  Fed. R. Evid. 801.  While certain statements are exempt from this definition, self-serving statements from the defendant are always inadmissible.  *See United States v. Larsen*, 175 F. App'x 236, 241 (10th Cir. 2006) ("Rule 801(d)(2), which excludes from the definition of hearsay admissions by a party-opponent, does not apply because that rule does not permit self-serving, exculpatory statements made by a party and offered by that same party."); *United States v. Cunningham*, 194 F.3d 1186, 1199 (11th Cir. 1999) ("[A] defendant cannot attempt to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination.").

10.     Defendant should be excluded from introducing any of his out-of-court statements offered for the truth of the matter asserted.  The United States intends on introducing evidence of Defendant's prior statement.  This is admissible as an exception to the prohibition against hearsay because it is a statement by a party opponent.  Defendant may not introduce his own statements without taking the stand, as he would not be the party opponent.  Defendant may testify about his version of the facts, under oath, subject to cross-examination.  Any attempt to introduce his statements through other witnesses would impede the United States' ability to cross-examine.  Generally, a party may not admit their own out-of-court statements offered for the truth of the matter asserted.  Fed. R. Evid. 801.  However, if a party's out-of-court statement is admitted against them, they may admit portions of their own statement that "in fairness ought to be considered at the" time of admission.  Fed. R. Evid. 106.  Referred to as the Rule of Completeness, a court need only admit portions that "clarify or explain the portion already received."  *United States v. Haddad*, 10 F.3d 1252, 1259 (7th Cir. 1993).  The party moving for inclusion under the Rule of Completeness must "demonstrate with particularity the unfairness in

the selective admission" of the earlier statement. *United States v. Branch*, 91 F.3d 699, 729 (5th Cir. 1996). Any portion that does "not directly modify or explain" the admitted evidence does not complete it. *United States v. Price*, 516 F.3d 597, 605 (7th Cir. 2008). A federal judge in New Mexico explained the concept like this:

> Statements are inextricably intertwined when the meaning of a statement, if divorced from the context provided by the other statement, is different than the meaning the statement has when read within the context provided by the other statement. Under those circumstances, a court must take care to avoid distortion or misrepresentation of the speaker's meaning, by requiring that the statements be admitted in their entirety and allowing the jury to determine their meaning.

*United States v. Rodriguez*, 122 F. Supp. 3d 1258, 1266 (D.N.M. 2015).

11. As long as the previously admitted portion is clear, admission of only the inculpatory portions of a statement is permissible. *Branch*, 91 F.3d at 726. To rule otherwise would permit a jury to consider a defendant's version of the events without subjecting him to the rigors of cross-examination, which is "precisely what is forbidden by the hearsay rule." *United States v. Cunningham*, 194 F.3d 1186, 1199 (11th Cir. 1999). The United States seeks a pre-trial ruling prohibiting Defendant from introducing his hearsay, self-serving statements through any other witness. He must testify and be subjected to cross-examination in order get his story to the jury.

II.     **Motion to Exclude Hearsay Speculation by witnesses**

12. The United States also seeks a pre-trial order from the Court prohibiting the defense from eliciting hearsay evidence from any witness in this case. In particular, there is a statement by J.T. (YOB 1994) to the FBI in which J.T. wonders and speculates, "if Tommy possibly did something and they were trying to blame it on Kevin" (the Defendant). There were other statements by J.T. that also constitute inadmissible hearsay. J.T. was not present in the home where A.W. was sexually assaulted and has no firsthand knowledge of the events that form

the basis of the indictment against Defendant. As such, her testimony would not assist the trier of fact, and is inadmissible under Rule 802 and under Rule 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

## CONCLUSION

WHEREFORE, the United States respectfully requests a pre-trial order prohibiting the defense from eliciting hearsay evidence from any witness in this case at trial.

    Respectfully submitted,

    JOHN C. ANDERSON
    United States Attorney

    *Electronically filed on July 12, 2019*
    KYLE T. NAYBACK
    ALLISON C. JAROS
    Assistant United States Attorneys
    Post Office Box 607
    Albuquerque, New Mexico  87102
    (505) 346-7274

I HEREBY CERTIFY that on July 12, 2019,
I electronically filed the foregoing with the Clerk
of the Court using the CM/ECF system, which
will cause a copy of this filing to be sent to
counsel for Defendant.

*/s/*
KYLE T. NAYBACK