IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Cr. No. 18-739 MV |
| ) | |
| vs. ) | |
| ) | |
| **KEVIN VIGIL**, ) | |
| ) | |
| Defendant. ) | |

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION *IN LIMINE*
TO INTRODUCE EVIDENCE OF A.W.'S MOTIVE TO LIE AND FEAR OF C.W.**

The United States hereby responds to Defendant Kevin Vigil's Motion *in Limine* to Introduce Evidence, under the Sixth Amendment's Confrontation Clause, of A.W.'s Motive to Lie and Fear of C.W.  Doc. 134.  The United States submits that A.W. made multiple consistent statements about her sexual assault in the days following the assault.  The relevant, admissible evidence is consistent with the defendant sexually assaulting A.W.

BACKGROUND

1. On March 13, 2018, a federal grand jury returned an indictment against Defendant Kevin Vigil, charging him with two counts of aggravated sexual abuse in violation of 18 U.S.C. §§ 1152, 2241(c) and 2246(2).  Doc. 25.

2. The indictment alleges that in the early morning hours of February 4, 2018, Defendant, a non-Indian, sexually assaulted six-year-old A.W., who is a member of the Ohkay Owingeh Pueblo.

3.      According to A.W.'s mother, she and Defendant were lying in bed with A.W. lying between them.  Responding to movement and sounds from her daughter, A.W.'s mother reached back with her hand and felt that her daughter's pants and underwear were pulled down.  She also felt Defendant's erect penis outside of his shorts.

4.      Mom confronted Defendant and she and A.W.'s father, T.W., immediately took the child to Presbyterian Española Hospital (PEH) and reported the sexual assault to law enforcement officials.  A.W. also was taken to Christus St. Vincent Hospital (CSVH) in Santa Fe, where she underwent a Sexual Assault Nurse Exam (SANE).

5.      On the way to the hospital, A.W., who refers to her vagina as her cookie, said, "Mom, my cookie hurts!"  "He put his fingers in my cookie!  I told him to stop, and he said, 'Be quiet!'"  A.W. also told C.W. that Defendant put his "peepee" in her butt.  A.W. told Defendant, "Stop!  Stop!  That hurts!" but Defendant continued to do it.

6.      The SANE examination revealed injuries to A.W.'s vagina and anus that are consistent with penetration or attempted penetration.  Sexual Assault Nurse Examiner Corine Luna stated that the skin between A.W.'s labia majora and minora was rubbed raw and was "weeping," that there was "gaping" in A.W.'s anus, and that A.W.'s wounds were "very fresh."

7.      During the SANE examination, Ms. Luna, questioned A.W. about what had happened.  A.W. told Ms. Luna that Defendant "touched [her] private parts."  (Doc. 82-1 at 4).  Ms. Luna asked what Defendant touched A.W.'s private parts with, and A.W. responded: "His fingers and his private part."  *Id.*  With the help of an anatomical drawing, A.W. explained that Defendant put his penis into her butt and that it hurt.  *Id.*  A.W. also indicated that Defendant used his fingers.  *Id.* at 5.  Ms. Luna asked A.W. if she said anything to Defendant during the assault.  *Id.*  A.W. responded: "I told him to stop! But he wouldn't.  I kept telling him to stop cuz

it was hurting and he said to be quiet and he kept doing it.  I kept trying to get his hand out but he kept doing it." *Id.*

8. On February 7, 2018, Federal Bureau of Investigation ("FBI") Child Forensic Interviewer Karen Blackwell talked to A.W., who said she had gone to the doctor because "something got hurt" at her "Uncle Kevin's."  A.W. marked the vaginal area on a drawing of a child to show where she had been hurt and said Uncle Kevin hurt the part that she had marked while she was asleep, had pulled down his pants, and stuck his finger in it.  A.W. said the next time she used the bathroom, "it was bleeding" and it hurt when she walked, stretched her legs, or when she would "duke" or "pee."

9. On February 8, 2018, FBI Special Agent Russell Romero submitted the Sexual Assault Evidence Kit taken during the SANE, buccal swabs taken from Defendant, A.W.'s clothing from the night of the assault, and other evidence to the New Mexico Department of Public Safety (NMDPS) Forensic Laboratory in Santa Fe for DNA analysis.

10. On February 15, 2018, Special Agent Romero received the results of the analysis from the lab.  Defendant's DNA was found on a number of locations on A.W.'s body, including her mons pubis and outer labia majora.  Defendant's DNA also was found inside A.W.'s underwear.  These are just two examples of multiple findings of Defendant's DNA on A.W.'s body or clothing.

ARGUMENT

11. It his motion, Defendant seeks to introduce evidence that demonstrates A.W. had motive to fear her mom and to lie. Doc. 134.

12. The United States does not object to Defendant asking A.W. about her motive to lie; however, Defendant cannot introduce extrinsic evidence to controvert her if her answer is that she did not lie.

13. Defendant suggests that J.T. could testify about something she never even observed. Doc. 134 at 4. J.T. simply reported to the FBI an incident about which A.W. told her. The government objects because Defendant cites no hearsay exception that would allow J.T. to provide this testimony.

14. Defendant also suggests calling T.W. to testify that "he has seen bruises on A.W.'s butt and scratches on her vagina in the past." Doc. 134 at 4. Again, Defendant cites to no rule of evidence that would allow defense counsel to elicit such testimony. T.W. did not know where the bruises or scratches came from, only that he saw them. That information is not relevant to any motive for A.W. to lie about her sexual assault and should be inadmissible.

15. Defendant seeks to admit statements that A.W. allegedly made to J.T. on February 6, 2018. A.W. allegedly said to J.T., "Something happened to me. My mom said I can't say anything; if I say anything, my mom said I will die." Nothing in J.T.'s report indicates what incident A.W. is referencing. A.W. does not say, for example, "two nights ago something happened to me," or "Uncle Kevin did something to me." The statement is unreliable and non-specific and should be inadmissible.

16. Defendant seeks to admit statements that T.W., Jr., reported to law enforcement that C.W. is "always yelling at A.W., grabbing her, yanking her and hitting her." A.W. is a child and there is no doubt parents of six-year-olds grab and raise their voice at their children. This type of behavior does not rise to the level where A.W. would fear her mother. By all accounts, A.W. was happy being with her mom and dad on the night of February 4th before she was

sexually assaulted. Tabatha Vigil stated that A.W. was happy and playing throughout the night. Defendant seeks to admit this evidence only to portray C.W. in a poor light and to contrive a reason that A.W. would lie.

17. The United States does not dispute that Defendant has a right to *reasonable* cross-examination concerning bias, motive to fabricate, and matters indicating lack of credibility. However, the testimony must otherwise be admissible under the rules of evidence. Hearsay statements about an event that a witness did not see directly would amount to inadmissible evidence. Equally, evidence of a mother grabbing or raising her voice at a six-year-old child should not be permitted as evidence that the child fears her mother or has a motive to lie.

18. Much of what Defendant seeks to admit will depend on how the evidence comes out on direct examination. The United States respectfully requests the Court order the parties to approach the bench and seek permission to elicit hearsay statements instead of simply asking the question in front of the jury.

WHEREFORE, the United States respectfully requests the Court deny the defendant's motion, in part, or reserve ruling until after direct examination of the witnesses.

    Respectfully submitted,

    JOHN C. ANDERSON
    United States Attorney

    */s/ Electronically filed on July 19, 2019*
    KYLE T. NAYBACK
    ALLISON C. JAROS
    Assistant United States Attorneys
    P.O. Box 607
    Albuquerque, New Mexico 87103
    (505) 346-7274

I HEREBY CERTIFY that on July 19, 2019, I filed the foregoing electronically through the CM/ECF System, which caused counsel for the defendant to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*/s/*
KYLE T. NAYBACK
Assistant United States Attorney