IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

                              Criminal No. 18-739-MV

v.

KEVIN VIGIL,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the government's Motion for Pre-trial Determination of Indian Country Land Status. Doc. 60. Mr. Vigil timely responded. Doc. 71. The government then filed a timely reply. Doc. 89. The Court heard arguments on this motion on July 29, 2019, at which time the parties entered a Stipulation Regarding Land Status. The Court, having considered the Motion, relevant law, and being otherwise fully informed, finds that the motion will be **GRANTED**.

### BACKGROUND

In a criminal prosecution under 18 U.S.C. §§ 1152 or 1153, the Court determines its jurisdiction based on facts established by a preponderance of the evidence. *See United States v. Bustillos*, 41 F.3d 931, 933 (10th Cir. 1994) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). The Indictment charges Kevin Vigil with two counts, both of which involve a violation of 18 U.S.C. § 1152. *See* Doc. 25 (Indictment) at 1, 2.

In the Indian County Crimes Act, 18 U.S.C. § 1152, and the Major Crimes Act, 18 U.S.C. § 1153, Congress "conferred on the federal courts special criminal jurisdiction over offenses committed in Indian country." *Cohen's Handbook of Federal Indian Law* § 9.01, at 236–37 (Neil

1

Jessup Newton et al. eds., 2012). The crime must occur within "Indian country" in order for there to be federal jurisdiction. 18 U.S.C. §§ 1152, 1153. The statute provides that "[a]ny Indian who commits against the person or property of another Indian or other person any of the following offenses, . . . within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses. . . ." 18 U.S.C. § 1153(a). According to § 1151, Indian country is defined as follows:

> Except as otherwise provided in sections 1154 and 1156 of this title, the term "Indian country", as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

18 U.S.C. § 1151.

The government "moves the Court for a pre-trial determination that the land on which the charged crimes in this case occurred" is "located within the exterior boundaries of the Ohkay Owingeh Pueblo" and "therefore is Indian Country for purposes of federal criminal jurisdiction." Doc. 60 at 1. The location is:

> 1326B Camino Raphael, in Española, Rio Arriba County, New Mexico, mainly in Section 25, Township 21N, Range 8E, NMPM, within the San Juan Land Grant.

*Id.*

It is not disputed that the land falls within the exterior boundaries of the Ohkay Owingeh Pueblo, a federally recognized Indian Tribe. *Id.*; Doc. 71 at 1; Stipulation Regarding Land Status ¶ 1. The parties further stipulate that, on July 12, 1935, title to the tract of land on which the charged crimes are alleged was transferred to Antonio David Salazar and Ramona B. de Salazar pursuant to the Pueblo Lands Act of 1924. Doc. 71 at 1–2, 4; Stipulation ¶ 2. The Salazars

were non-Indians. *Id.* The 1935 patent transferring the land validly conveyed the land at issue to the Salazar family. *See* Doc. 71-1, Ex. A; Stipulation ¶ 3. At the time of the alleged crimes, the land was privately held by non-Indians. Stipulation ¶ 4.

The government outlines the evidence it is prepared to present to confirm the status of the land. *See id.* at 4–6 & Exs. This includes an April 11, 2018 certification by the Ohkay Owingeh's Natural Resource Director that the address "is located within the exterior boundaries of the Ohkay Owingeh" Pueblo [Ex. 2], as well as Bureau of Indian Affairs maps [Exs. 1, 3] showing the location of the address at issue in relation to the Pueblo boundaries, and the Federal Register showing the tribe is federally recognized [Ex. 4].

Mr. Vigil argues that this Court lacks subject matter jurisdiction. Doc. 71 at 1. He presents the 1935 Patent as Exhibit A, which states that it "shall have the effect only of a relinquishment by the United States of America and the Indians of said Pueblo." *Id.* at 2, Ex. A. He notes that Exhibit F, the supplemental plat containing the tract of land conveyed to the Salazars, states that it "represents the survey of certain tracts of land within the San Juan Pueblo Grant to which the Indian title has been extinguished according to the findings of the Pueblo Lands Board." *Id.* at 7, Ex. F. In addition, Mr. Vigil submitted a letter from Thomas Aragon, the Planning and Zoning Director of Rio Arriba County, stating that Antonio David Salazar and his wife "met the requirements necessary under a federal land claim. In doing so, he and his wife were awarded a U.S. Patent for the land thereby extinguishing any tribal claim to the land." *Id.* at 71-1 [Ex. E]. The defense thus requests that the case be dismissed as the Court must presume it lacks subject matter jurisdiction. *Id.* at 1.

In its reply, the government points out that the land at issue was transferred by patent issued by the United States executive branch on July 12, 1935, but under the plain language of the 2005

amendments to the Pueblo Land Act, there are no exceptions for lands held privately by non-Indians unless extinguished by Congress—that is, all land within the exterior boundaries of the Pueblo constitute "Indian Country." Doc. 89 at 2.

The language upon which the parties disagree is the clause "except as otherwise provided by Congress" found in the 2005 amendments to the 1924 Pueblo Land Act. 119 Pub. L. No. 109-133, 119 Stat. 2573. Defense believes that the 2005 amendments to the Pueblo Land Act excludes from the grant of federal jurisdiction those lands formerly belonging to the Pueblos that were transferred to private ownership as a result of the 1924 Pueblo Land Act. Doc. 71 at 7. At the hearing, defense argued that this language is not throat clearing, as the government suggests. Transcript[1] at 13:15–23. Rather, the rule against surplusage suggests that this language was intended to have the legal effect of covering the land for which "patents were issued to non-Indians through the process of the Pueblo Land Act." Tr. at 13:23–14:1.

The government, meanwhile, disagrees with this interpretation and notes that the Pueblo Land Act was "focused on the narrow issue of quieting title of lands lying within the exterior boundaries of Pueblo lands." Doc. 89 at 3. Government notes also that it was the Executive, not Congress, that issued the land patent to the Salazars and the plain language of the 2005 amendments require an act of Congress to form the basis for an exception to federal jurisdiction. *Id.* (citing *St. Charles Inv. Co. v. Comm'r*, 232 F.3d 773, 776 (10th Cir. 2000) ("It is a general rule of statutory construction that if a statute specifies exceptions to its general application, other exceptions not explicitly mentioned are excluded."). The government goes on to discuss the history of the 2005 amendments to the 1924 Pueblo Land Act and the goal to "avoid lawless enclaves within Pueblo Lands." Doc. 89 at 5–7.

---

[1] References to the transcript are to draft of the July 29, 2019 hearing.

## DISCUSSION

### I. Legal Standard

The Court may determine that the offenses proffered by the United States are within the territorial boundaries of the Ohkay Owingeh Pueblo, and then leave to the jury the question of whether the offenses occurred in those locations. *See, e.g.*, *United States v. Neha*, No. CR 04-1677 JB, 2006 WL 1305034, at *4 (D.N.M. April 19, 2006) ("While the Tenth Circuit, in *United States v. Roberts*, stated that district courts can find, as a matter of law, that a particular location is Indian Country, and then instruct the jury to determine factually whether the offense occurred there, the Tenth Circuit did not require courts to follow that procedure."). The Court may take evidence on this issue outside of the presence of the jury and instruct the jury based upon its findings. *See, e.g.*, *United States v. Tsosie*, No. CR 10–0773 JB, 2011 WL 2728346, at *1 ("While the Court usually hears the evidence at trial with the jury, there does not appear to be any problem with the Court hearing the evidence pretrial outside of the jury's presence and making the decision pretrial."). Courts have accepted a variety of evidence to prove this jurisdictional fact, including oral testimony, aerial photographs, maps, and land titled records. *See, e.g.*, *United States v. Atkinson*, 916 F. Supp. 969 (D.S.D. 1996) (aerial photography, oral testimony, and maps); Lamy, 521 F.3d at 1267–68 (oral testimony, aerial photography, maps).

As is relevant here, "Indian country" includes "all land within the limits of any Indian reservation under the jurisdiction of the United States Government, *notwithstanding the issuance of any patent*, and, including rights-of-way running through the reservation." 18 U.S.C. § 1151(a) (emphasis added). The Tenth Circuit has recognized Pueblo land as dependent Indian communities "entitled to the aid and protection of the federal government and subject to congressional control." *United States v. Arrieta*, 436 F.3d 1246, 1249 (10th Cir. 2006). The

District of New Mexico has confirmed that Indian land subject to the issuance of any patent is still Indian land if the property lies within the boundaries of the Indian reservation. *See United States v. Antonio*, No. 16-CR-1106-JB, 2017 WL 3149361 at *11 (D.N.M. June 5, 2017) (citing William C. Canby, American Indian Law § 7.B, at 140 (5th Ed. 2009)); *see also Seymour v. Superintendent of Wash. State Penitentiary*, 368 U.S. 351, 356–57 (1962); *United States v. Webb*, 219 F.3d 1127, 1131 (9th Cir. 2000) (holding "if the property is within boundaries of the reservation, it is Indian country irrespective of whether it is now held by a non-Indian.").

When applying the definition of "Indian country" to criminal trials under the Major Crimes Act, the Tenth Circuit has held that as "a general matter, the trial court decides the jurisdictional status of a particular property or area and then leaves to the jury the factual determination of whether the alleged crime occurred at the site." *United States v. Roberts*, 185 F.3d 1125, 1139 (10th Cir. 1999). Thus, "a trial court also acts appropriately when it makes the jurisdictional ruling a particular tract of land or geographic area is Indian Country, and then instructs the jury to determine whether the alleged offense occurred there." *Id.*

"The party seeking to invoke the jurisdiction of the federal court must demonstrate that the case is within the court's jurisdiction." *Bustillos*, 31 F.3d at 933. "The facts supporting jurisdiction must be affirmatively alleged, and if challenged, the burden is on the party claiming that the court has subject matter jurisdiction." *Id.* (citing *McNutt*, 298 U.S. at 189). Therefore, in a criminal prosecution under 18 U.S.C. §§ 1152 or 1153, the United States has the burden to prove by a preponderance of the evidence that the land on which the crime is alleged to have occurred is Indian country under 18 U.S.C. § 1151. *McNutt*, 298 U.S. at 189.

Prior to the 2005 amendments to the 1924 Pueblo Land Act, the courts struggled with a checkerboard jurisdiction that made determining Indian country difficult. In *Seymour*, for

example, the petitioner alleged that his state conviction was void due to lack of jurisdiction, arguing that "the 'purported crime' of burglary for which he had been convicted was committed in 'Indian country'" and, therefore, was within the United States' exclusive jurisdiction. 368 U.S. at 352 (quoting 18 U.S.C. § 1151). The government argued that the State retained jurisdiction over the matter, because "the particular parcel of land upon which this burglary was committed is held under a patent in fee by a non-Indian." *Id.* at 357. The Supreme Court acknowledged that, at one time, the State of Washington's contention "had the support of distinguished commentators on Indian Law," but the Supreme Court concluded that "the issue has since been squarely put to rest by congressional enactment of the currently prevailing definition of Indian country in § 1151." *Id.* Accordingly, "if the property is within boundaries of the reservation, it is Indian country irrespective of whether it is now held by a non-Indian." *Webb*, 219 F.3d at 1131 (citing 18 U.S.C. § 1151(a)).

After *Seymour*, "the mere opening of a reservation for non-Indian settlement" does not remove the lands that non-Indians own in fee simple from Indian country under 18 U.S.C. § 1151(a); however, "a congressional decision to abandon the reservation status of those lands does." *United States v. Antonio*, No. CR 16-1106-JB, 2017 WL 3149361, at *12 (D.N.M. June 5, 2017), *appeal docketed*, No. 18-2118 (10th Cir. Feb. 19, 2019) (citing *American Indian Law* § 7.B, at 141). "If Congress clearly acts to disestablish or diminish reservation land, then the land is 'outside the reservation boundary, and therefore outside of Indian country under 18 U.S.C. § 1151(a).'" *Id.* (citing *United States v. Webb*, 219 F.3d at 1131).

The Supreme Court has held that Congress has: (i) the power to recognize "dependent tribes requiring the guardianship and protection of the United States;" (ii) the exclusive power "to determine for itself when the guardianship which has been maintained over [protected Indian

communities] shall cease;" and (iii) the power "to prohibit the introduction of liquor into . . . the lands of the Pueblos," without unlawfully encroaching upon New Mexico's traditional police power. *See United States v. Sandoval*, 231 U.S. 28, 48–49 (1913) ("Being a legitimate exercise of that power, the legislation in question does not encroach upon the police power of the state, or disturb the principle of equality among the states."). As Mr. Vigil notes, "Congressional intent to extinguish Indian title must be 'plain and unambiguous.'" Doc. 71 at 6 (citing *United States v. Santa Fe Pacific R. Co.*, 314 U.S. 339, 346 (1941)). Accordingly, the Supreme Court determined that the Pueblo lands were Indian country, subject to federal jurisdiction, even where Pueblo lands were not formally designated as reservations, unless explicitly excepted by Congress. *Sandoval*, 231 U.S. at 48–49.

On December 20, 2005, Congress amended the Pueblo Lands Act, 43 Stat. 636 (1924) in order to clarify criminal jurisdiction on Pueblo lands. *See* Indian Pueblo Land Act Amendments of 2005, Pub. L. No. 109-133, 119 Stat. 2573 (Dec. 20, 2015), *codified at* 25 U.S.C. § 331 Note. The Amendment provides:

> **SEC. 20. Criminal Jurisdiction**.
> (a) IN GENERAL. Except as otherwise provided by Congress, jurisdiction over offenses committed anywhere within the exterior boundaries of any grant from a prior sovereign, as confirmed by Congress or the Court of Private Land Claims to a Pueblo Indian tribe of New Mexico, shall be as provided in this section.
> (b) JURISDICTION OF THE PUEBLO. The Pueblo has jurisdiction, as an act of the Pueblos' inherent power as an Indian tribe, over any offense committed by a member of the Pueblo or an Indian as defined in title 25, sections 1301(2) and 1301(4), or by any other Indian-owned entity.
> (c) JURISDICTION OF THE UNITED STATES. The United States has jurisdiction over any offense described in chapter 53 of title 18, United States Code, committed by or against an Indian as defined in title 25, sections 1301(2) and 1301(4) or any Indian-owned entity, or that involves any Indian property or interest.
> (d) JURISDICTION OF THE STATE OF NEW MEXICO. The State of New Mexico shall have jurisdiction over any offense committed by a person who is not a member of a Pueblo or an Indian as defined in title 25, sections 1301(2) and 1301(4), which offense is not subject to the jurisdiction of the United States.

8

25 U.S.C. § 331 Note. Congress thus provided the test by which Courts are to determine whether it has jurisdiction over alleged violations of 18 U.S.C. §§ 1152 and 1153 on Pueblo land. The test is clear: if the charging document alleges a violation of either of these statutes, and the violation occurs "anywhere within the exterior boundaries of any grant from a prior sovereign, as confirmed by Congress or the Court of Private Land Claims to a Pueblo Indian tribe of New Mexico," then a federal court has jurisdiction over the matter. 25 U.S.C. § 331 Note; *see also Hydro Res., Inc. v. U.S. E.P.A.*, 608 F.3d 1131 (10th Cir. 2010) (en banc) (quoting 25 U.S.C. § 331 Note). The State of New Mexico has similarly held that "[t]he privately-held fee lands within the exterior boundaries of both Taos and Pojoaque Pueblos . . . remain Indian country, and the State does not have jurisdiction to prosecute the alleged crimes occurring there." *State v. Romero*, 2006-NMSC-039, ¶ 26, 142 P.3d at 896.

Where Congress *has* extinguished Indian rights to land, the Tenth Circuit has recognized that federal criminal jurisdiction will no longer exist. *See Hackford v. Utah*, 845 F.3d 1325 (10th Cir. 2017), *cert. denied*, 138 S.Ct. 206 (2017). In *Hackford*, the Tenth Circuit concluded that the criminal allegations committed by an Indian did *not* take place in tribal land as Congress had, in 1910, expressly extinguished Indian interest in the land and had set it aside for use as a reservoir. *Id.* at 1329. The land was thereby removed from the reservation and it no long maintained Indian country status. *Id.*

Using similar logic, the Tenth Circuit reached an opposite conclusion in *Magnan v. Trammell*: the land where the alleged crimes occurred *was* "Indian country" because one step required to extinguish Indian title had not been completed. 719 F.3d 1159 (10th Cir. 2013). In a 1945 law, Congress had set forth the following requirement for extinguishment of federal restrictions on what had been Indian land: approval of the Secretary of the Interior in order to

9

effectuate a conveyance to the Housing Authority. *Id.* at 1172. Meeting this requirement would have removed the Indian status of the land at issue, but the requirement was not satisfied. *Id.* Therefore, the Tenth Circuit concluded that, because the land was not conveyed to the Housing Authority, it remained "Indian country" at the time of the offense and the United States maintained criminal jurisdiction over the land. *Id.* at 1176, n.8.

## II.     Analysis

In light of the Indian Pueblo Land Act Amendments of 2005, the jurisdictional inquiry is whether the instant offense occurred "anywhere within the exterior boundaries of any grant from a prior sovereign, as confirmed by Congress or the Court of Private Land Claims to a Pueblo Indian tribe of New Mexico." 25 U.S.C. § 331 Note. Congress' intent in enacting the Amendments of 2005 was "to clarify the uncertainty and potential law enforcement problems" on the New Mexico Pueblos' lands that had become such a problem that the territories were regularly referred to as having "checkerboard" jurisdiction. S. REP. 108-406, at 3, n.1 (2004).

Here, the parties do not dispute that the land at issue—1326 B Camino Raphael (also known as Calle Raphael)—falls within the exterior boundaries of the Ohkay Owingeh Pueblo. Although the 1935 patent passed the land to the Salazars, who are non-Indians, the definition of "Indian country," codified in 18 U.S.C. § 1151 is clear that the land remains "Indian country" notwithstanding the issuance of any patents. Though Mr. Vigil cites to *Hackford* and *Magnan*, the Court does not believe these cases support his position that the land at issue here is not Indian country. Here, the 1935 patent was not effectuated by Congress as would be necessary to except the land's status as "Indian country." *See Hackford*, 845 F.3d at 1330. Additionally, as government notes, these cases do not address the 1924 Pueblo Land Act and subsequent amendments.

Further, as was the intent of Congress in the passing of the 2005 amendments to the Pueblo Land Act to avoid checkboard jurisdiction, the "United States has jurisdiction over any offense described in chapter 53 of title 18, United States Code, committed by or against an Indian as defined in title 25, sections 1301(2) and 1301(4) or any Indian-owned entity, or that involves any Indian property or interest." These amendments clarified that federal jurisdiction extends over all Pueblo lands, including those privately held.

## CONCLUSION

The Court concludes that is has federal criminal jurisdiction in this matter. The land at issue in the instant offense is located within the exterior boundaries of the Ohkay Owingeh Pueblo, San Juan Land Grant, as the boundaries were confirmed by Congress in 1858. Though the land was privately held at the time of the instant offense, the patent was not issued by Congress and the land has remained "Indian country."

**IT IS THEREFORE ORDERED** that the Court will **GRANT** the government's Motion for Pre-trial Determination of Indian Country Land Status. Doc. 60.

DATED this 16th day of August, 2019.

_____
MARTHA VÁZQUEZ
United States District Judge